**ams**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CATHERINE SKILES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06-4040-JAR** |
| | ) | |
| **COUNTY OF RAWLINS, a political subdivision** | ) | |
| **of the State of Kansas, DAWNA VAP, DERIK** | ) | |
| **VAP, JOHN TIMM, BLAKE GINTHER, and** | ) | |
| **MYRON WITHINGTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Catherine Skiles filed this diversity action against Rawlins County ("the County"), alleging that the County was negligent in its handling of an automobile accident in which she was severely injured. Now before the Court are the County's Motion to Dismiss (Doc. 21) and plaintiff's Motion to Hold Defendant's Motion to Dismiss in Abeyance (Doc. 30). The motions are fully briefed and the Court is prepared to rule. As explained more fully below, the Court denies plaintiff's motion to hold the motion to dismiss in abeyance and denies the County's motion to dismiss.

**I.      Factual Allegations**

The following facts are alleged in the Complaint and the Court draws all reasonable inferences in favor of plaintiff. On April 17, 2004, plaintiff, along with defendants John Timm, Myron Withington, and Blake Ginther, were passengers in a vehicle driven by defendant Derik Vap. At approximately 3:00 a.m., the vehicle was traveling eastbound on Rawlins County Road T5, north of the city limits of Atwood, when it attempted to make a left turn at County Road 23

at a high speed.  Derik Vap lost control of the vehicle and it rolled several times.  Derik then called his mother, defendant Dawna Vap, on his cellular phone and she came to the scene of the wreck and retrieved Derik and all the passengers.  She took them to her home in Atwood, Kansas.

Dawna contacted a Rawlins County dispatcher at approximately 4:51 a.m. and reported that Derik had been in a car accident.[1]  She reported to the dispatcher that the vehicle was in a ditch, and provided the location of the car.  Dawna also reported that Derik was unhurt and sleeping.  Although the dispatcher did not ask whether there were any other passengers in the vehicle at the time of the accident, Dawna did not report to the dispatcher that there were other passengers in the vehicle when the accident occurred.

Rawlins County Dispatch then contacted Officer Bruce Nickel of the Rawlins County Sheriff's Office and advised him of the call.  Although Officer Nickel did not immediately respond, he eventually telephoned Dawna, who assured him that "everything was OK."  Officer Nickel then agreed to postpone interviewing Derik about completing an accident report.  He did not ask whether there were other passengers in the car, and Dawna again did not volunteer that information.  At 1:30 p.m. that day, Officer Nickel interviewed Derik.  Officer Nickel learned at this time that there were at least two others in the vehicle at the time of the accident and that Derik had been drinking alcohol before the accident.  Officer Nickel requested the names of these two passengers, but did not contact them.[2]  Neither Derik nor Dawna Vap advised Officer

---

[1] Although not alleged in the Complaint, plaintiff contends in her response memorandum that the dispatcher had some sort of friendship with Dawna.

[2] The Complaint does not specify which of the four passengers' names Derik Vap provided to Officer Nickel.

Nickel that plaintiff was potentially seriously injured.

Plaintiff was unconscious at the Vap house until approximately 10:00 a.m. on the morning of April 17, 2004. At that time, Derik Vap took plaintiff back to her father's house, where she remained unconscious until approximately 6:00 p.m. At 6:49 p.m., plaintiff was taken by ambulance to the hospital. Once at the hospital, it was determined that plaintiff had suffered a brain injury that was irreversible. Plaintiff alleges that this injury substantially progressed in the seventeen hours between the time of the accident and her treatment at the hospital. With regard to the County, plaintiff alleges that her injuries were proximately caused by the negligence of (1) Rawlins County Dispatch in failing to ask Dawna whether there were passengers with Derik when he wrecked the vehicle and in failing to summon rescue personnel to the Vap house upon receiving this call; (2) Officer Nickel for failing to respond, investigate or inquire about the possibility of other passengers in the vehicle; (3) other agents and employees of the County for failing to respond, investigate, or inquire about the possibility of other passengers in the vehicle; and (4) the County for negligently training and supervising its agents and employees.

## II.     Applicable Standard and Plaintiff's Motion to Hold the County's Motion to Dismiss in Abeyance

The County's motion to dismiss under Fed. R. Civ. P. 12(b)(6) is based on two arguments: (1) the County owed no duty to plaintiff; and (2) certain exceptions in the Kansas Tort Claims Act ("KTCA") apply to plaintiff's claims against the County, rendering it immune from suit. In both its response to the motion to dismiss and in a separate motion, plaintiff asks that this Court convert the motion to dismiss into a motion for summary judgment under Rule 56, and to hold the motion in abeyance pursuant to Rule 56(f) in order for plaintiff to seek discovery

before deciding these claims.  Specifically, plaintiff characterizes the County's motion as relying on lack of knowledge by certain parties to the case, and argues that discovery is necessary in order to ascertain what certain parties involved in the litigation knew at the time of the facts giving rise to this suit.  Plaintiff also seeks discovery of any county policies or procedures that govern accident response.

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint and should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[3] When deciding a motion to dismiss, the Court "must accept as true the plaintiff's well-pleaded factual allegations and all reasonable inferences must be indulged in favor of the plaintiff."[4]

Under Fed. R. Civ. P. 12(b), if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Considering matters outside the pleadings on a motion to dismiss without converting it into a motion for summary judgment may be grounds for reversal unless dismissal would be justified anyway based on the complaint alone.[5]

Plaintiff asserts that the County relies on matters outside the pleadings in its motion to dismiss.  Specifically, she points to the County's memorandum in support of the motion to

---

[3]*Callery v. U.S. Life Ins. Co.*, 392 F.3d 401, 404 (10th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Martinez v. Roth*, 53 F.3d 342, 342 (10th Cir. 1995), *cert. denied*, 516 U.S. 1012 (1995).

[4]*Martinez*, 53 F.3d at 342 (quoting *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987)).

[5]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

4

dismiss, where it concludes that no liability should attach because the only information the County employees had was what Donna Vap had communicated to them and that they had no knowledge that plaintiff was involved in the car accident at issue.  Plaintiff characterizes these statements as "assertions of fact" that "deserve to be verified and tested through discovery."  The Court disagrees.  Plaintiff is unable to point the Court to any "matters outside the pleadings" that the County relies upon in its motion.  Rule 56 contemplates such matters to include some sort of outside evidentiary support for factual assertions, such as affidavits, answers to interrogatories, or deposition testimony.  No such materials are attached to the County's motion to dismiss.

Here, plaintiff merely isolates certain characterizations of the facts alleged in the Complaint by the County and argues that these characterizations alone should be sufficient to convert the motion into one for summary judgment.  But this misapprehends the Court's role in deciding a motion to dismiss.  As articulated above, the Court is to only evaluate the facts as they are alleged in the Complaint and determine if they state a claim upon which relief may be granted.  The Court conducts this inquiry accepting as true all of plaintiff's well-pleaded factual allegations and finds all reasonable inferences in favor of plaintiff.[6]  The Court creates reversible error if it fails to do this.  Because this Court has no intention of relying on matters outside the pleadings (indeed there are none) in order to conduct its analysis on this motion to dismiss, Rule 56 is inapplicable and the Court declines to hold the motion in abeyance or to convert the motion into one for summary judgment.

## III.     Motion to Dismiss

The Court has already discussed the appropriate standard on a motion to dismiss.  The

---

[6]This does not include, as plaintiff suggests, an "assumption that her Complaint does state a claim under the law, if the application of the law is in question."  (Doc. 29 at 21.)

County's motion makes the following arguments in favor of dismissal: (1) the County and its employees did not owe any duty to plaintiff; and (2) certain exceptions to governmental tort liability in the KTCA apply to bar plaintiff's tort claims against the County.

### A. Duty

To assert a claim for negligence, plaintiff must allege facts that would support the following essential elements: (1) the existence of a duty from the defendant to the plaintiff; (2) breach of that duty; (3) causation between the duty breached and the injury received; and (4) damages due to the negligence.[7]  "A fundamental rule of tort analysis is that actionable negligence must be based on a breach of duty.  The plaintiff is required to prove the existence of a duty owed to him or her by the defendant.  The existence of a legal duty is a question of law."[8] In the Complaint, plaintiff alleges that: (1) the dispatcher owed plaintiff a duty to ask Dawna whether Derik was traveling with passengers at the time of the accident and "to summon rescue personnel to the Vap home"; (2) Officer Nickel owed plaintiff a duty to respond, investigate or inquire from Dawna or Derik whether there were any passengers in the vehicle; (3) "other agents and employees of the County" owed plaintiff a duty to likewise respond, investigate or inquire about passengers in the vehicle; and (4) the County owed plaintiff a duty to properly train and supervise its employees.

In an action against a governmental entity, the Court must also consider the "public duty doctrine."[9]  Under the public duty doctrine, "a governmental agency owes duties to the public at

---

[7]*See, e.g.*, *Woodruff v. City of Ottawa*, 951 P.2d 953, 956 (Kan. 1997); *Lamb v. Albers*, 109 P.3d 1265, 1268 (Kan. Ct. App. 2005).

[8]*Lamb*, 109 P.3d at 1268 (citations omitted).

[9]*See, e.g.*, *Kirk v. City of Shawnee*, 10 P.3d 27, 30 (Kan. Ct. App. 2000).

large rather than to individuals. . . .  No duty exists unless the plaintiff establishes that the agency owed a special duty to the injured party."[10]  Such special relationships include common carriers and their passengers, innkeepers and their guests, parents and their children, masters and servants, possessors of land and licensees, persons in charge of one with dangerous propensities, and persons with custody of another.[11]  A duty may also arise if it was alleged that the County had "undertaken, gratuitously or for a consideration, to render services," which requires it to have performed an affirmative act or some agreement, under Restatement (Second) of Torts § 324A.

None of the special relationships listed above are present here.  With regard to the dispatcher who answered Dawna Vap's phone call the morning of the accident, plaintiff maintains that the public duty doctrine is inapplicable because the dispatcher is not considered a "law enforcement officer" under Kansas law.  Plaintiff urges that the doctrine only applies to law enforcement officers, as the term is defined in K.S.A. § 12-4113(j).   The Court does not find this to be a sound interpretation of Kansas law on this issue. The general rule in Kansas articulates the public duty doctrine as applicable to any "government agency."[12]  Plaintiff filed this action against the County, which is certainly a government agency.[13]  Within that agency, plaintiff specifically refers to the actions of the dispatcher, Officer Nickel, "other agents and employees," and the supervisors and trainers.  The Court finds that the public duty doctrine applies to all

---

[10]*Id.*

[11]*Burney ex rel. Rose v. Kan. Dep't of Soc. & Rehab. Servs.*, 931 P.2d 26, 30 (Kan. 2004) (citing *P.W. v. Kan. Dep't of Soc. & Rehab. Servs.*, 877 P.2d 430 (Kan. 1994); Restatement (Second) of Torts § 315).

[12]*See, e.g.*, *id.* at 29 (applying doctrine to SRS); *Kirk*, 10 P.3d at 30 (applying doctrine to municipality).

[13]*See* K.S.A. § 75-6102(b)–(c).

government agencies, including the County and its employees.

Moreover, even if the public duty doctrine only applied to law enforcement, the Court finds that the dispatcher in this case would qualify.  The County correctly points to the definition of "law enforcement" in the Kansas statutes:

> [A]ny person who by virtue of office or public employment is vested by law with a duty to maintain public order or to make arrests for violation of the laws of the state of Kansas or ordinances of any municipality thereof or with a duty to maintain or assert custody or supervision over persons accused or convicted of crime, and includes court services officers, parole officers and directors, security personnel and keepers of correctional institutions, jails or other institutions for the detention of persons accused or convicted of crime, while acting within the scope of their authority.[14]

Kansas courts have described the public duty doctrine as applying to "policing functions."[15] Policing functions include preserving the peace and protecting public welfare—public duties.[16] But the Kansas Supreme Court has not applied the K.S.A. definition of "law enforcement" officer rigidly when determining whether the public duty doctrine applies.  For example, in *McCormick v. Board of County Commissioners of Shawnee County*,[17] the Kansas Supreme Court considered whether the doctrine applied to a prosecutor in her capacity as the affiant of a probable cause affidavit and applicant for an arrest warrant.  The court stated that "she bore the

---

[14]K.S.A. § 22-2202(13).  In contrast, plaintiff relies on the definition of law enforcement found in K.S.A. § 12-4113(j).  This definition is applicable to the code for municipal courts and does not squarely apply here.  *See McCormick v. Bd. of County Comm'rs of Shawnee County*, 35 P.3d 815 (Kan. 2001) (applying section 22-2202(13) in the context of the public duty doctrine).

[15]*Lamb*, 109 P.3d at 1269; *Kirk*, 10 P.3d at 31.

[16]*See Lamb*, 109 P.3d at 1269.

[17]35 P.3d 815 (Kan. 2001).

same type of duty as other law enforcement officers."[18]  This Court finds that the dispatcher generally performs such "policing functions" or law enforcement duties and that any duty owed by Sheriff's office dispatchers is owed to the public at large, and not to specific individuals.

Both parties point the Court to cases from various other jurisdictions that hold one way or another on the issue of whether an emergency dispatcher should be considered law enforcement. The only Kansas decision that addresses the issue is *Eames v. Board of County Commissioners of Phillips County*,[19] which is a 1990 case from this district where the plaintiffs suffered injuries when their car struck cattle that wandered onto the highway they were traveling on.  Plaintiffs alleged that one of the county dispatchers was negligent by failing to dispatch an officer to the area where cattle had been reported loose prior to the accident.[20]  There, the court found that the dispatcher owed a duty to the plaintiffs because she committed an affirmative act by undertaking to render services to him.  Following a 1986 decision by the Kansas Supreme Court in *Fudge v. City of Kansas City*,[21] the court held that only if a jury found that the county sheriff's department had a policy requiring its dispatchers to take specific measures when they received reports of cattle wandering on the roadways, could it determine that the dispatcher failed to exercise reasonable care.[22]

Plaintiff urges the Court to follow the reasoning of *Eames*, while the County points the Court to overwhelming authority that the *Fudge* decision, on which *Eames* is primarily based,

_____

[18]*Id.* at 832.

[19]733 F. Supp.  322 (D. Kan. 1990).

[20]*Id.* at 323.

[21]720 P.2d 369 (1986), *superseded by statute in* K.S.A. § 75-6104(d).

[22]*Eames*, 733 F. Supp.  at 325.

9

has since been superseded by statute.  It appears clear to the Court that *Eames* indeed primarily

relied on a case that is no longer good law.  As the County correctly points out, the Kansas

courts have thoroughly explained the legislative history of K.S.A. § 75-6104(d), which was

specifically drafted to overturn the rule announced in *Fudge* that the failure to comply with

specific, mandatory policies can create a duty upon which liability may be established.[23]

Although *Eames* was decided in 1990, the facts giving rise to that case occurred before the 1987

legislative amendment that overturned *Fudge*.  That amendment was passed in 1987 and added a

new subsection to K.S.A. § 75-6104:

> A governmental entity or an employee acting within the
> scope of the employee's employment shall not be liable for
> damages resulting from:
> . . . .
>
> d) adoption or enforcement of, or failure to adopt or enforce, any
> written personnel policy which protects persons' health or safety
> unless a duty of care, independent of such policy, is owed to the
> specific individual injured, except that the finder of fact may
> consider the failure to comply with any written personnel policy in
> determining the question of negligence.[24]

As the Kansas Supreme Court has explained, "the legislative history . . . makes it clear that the

1987 amendment was intended to overrule the *Fudge* decision."[25]  It further stated that the

primary intent of the amendment "appears to be that *Fudge*, if continued as valid precedent,

---

[23]*See Schmidt v. HTG, Inc.*, 961 P.2d 689–90 (Kan. 1998), *cert. denied*, 525 U.S. 964 (1998) ("Liability can no longer be established by the failure to follow such a policy unless an independent duty of care is owed to the injured party."); *Jarboe v. Bd. of County Comm'rs of Sedgwick County*, 938 P.2d 1293, 1301–04 (Kan. 1997) (holding that a written policy does not create a duty and fell under the discretionary exception to the KTCA); *Woodruff v. City of Ottawa*, 951 P.2d 953, 958–59 (Kan. 1997) (holding that an unwritten policy does not create a special relationship or specific duty).

[24]K.S.A. § 75-6104(d) (as amended).

[25]*Jarboe*, 938 P.2d at 1301.

would encourage all governmental agencies not to develop any written policies, guidelines, or procedures, as any deficiency or failure to completely abide by these procedures would remove the agency's discretion and result in liability."[26]  Kansas law is explicit that neither written nor unwritten policies may form the basis of an independent duty of a governmental agency.[27] Plaintiff argues that the wording of the policies will more clearly set forth the nature of the duty owed to her.  But as already described, plaintiff is statutorily prohibited from relying on such policies to form the basis of a duty.[28]  The Court finds no set of facts alleged by plaintiff could support a finding of duty based on this theory of a written or unwritten policy.  Finally, plaintiff does not allege any facts that the dispatcher engaged in some affirmative act that could establish a duty to inquire about other passengers in the vehicle.

        With regard to Officer Nickel, plaintiff does not appear to contest the County's contention that the public duty doctrine applies to his actions.  Officer Nickel was clearly performing law enforcement duties, even under the more restrictive reading of that term by plaintiff.   He responded to a dispatcher's report of a call by Dawna Vap that her son had been in a car accident.  Plaintiff does not allege that Officer Nickel had a special relationship with plaintiff.

        The Court also declines to find a duty owed by "other employees and agents" of the

---

[26]*Id.* at 1303.

[27]*Jarboe*, 938 P.2d at 1301; *Woodruff*, 951 P.2d at 958–59.  Further, the facts of this case are easily distinguishable from the facts in *Eames*.  There, a report had been made to the dispatcher earlier about the loose cattle on the road but the dispatcher did not respond.  Here, the Complaint alleges that although the dispatcher did not inquire about other passengers in the vehicle, Dawna Vap affirmatively misrepresented the accident as involving one person—her son Derik, who she represented was unhurt and sleeping.

[28]If the Court had found a duty independent of these policies, then the finder of fact could consider the policies as evidence of negligence.  K.S.A. § 75-6104(d).  Because the threshold requirement of duty is not found, this point is moot.

County who are not referred to with specificity in the Complaint.  As discussed above, the

dispatcher and Officer Nickel, the only specifically referenced County employees in the

Complaint, owe duties to the public, and not to plaintiff as an individual.  Finally, plaintiff

alleges a duty was owed by the County to plaintiff with regard to training and supervision of its

employees.  Like the dispatcher and Officer Nickel, any duty owed to train and supervise

employees is owed to the public at large.[29]  "The duty to instruct . . . dispatchers [i]s a duty owed

to the public and not to any particular individual."[30]  Even resolving all factual inferences in

plaintiff's favor, the public duty doctrine dictates that the County only owed a duty to the public

and not an independent duty to plaintiff.

But plaintiff does allege facts that, if true, could establish Officer Nickel performed some

affirmative act that would give rise to a duty.  According to the Complaint, Officer Nickel

interviewed Derik at about 1:00 p.m. and obtained the names of two passengers in the vehicle at

the time of the accident.  Four hours then passed between the time Officer Nickel received this

information and the time when plaintiff was taken to the hospital by ambulance.  It is unclear

from the Complaint which passengers Derik told Officer Nickel about, as well as whether

Officer Nickel attempted to contact them.  The facts alleged in the Complaint could establish that

by going to interview Derik and obtaining the names of passengers in the vehicle when the

accident occurred, after not having that information provided to him by Derik's mother, Officer

Nickel took some affirmative act that gave rise to an independent duty toward those passengers

to investigate further.  Therefore, under the exacting standard to be applied on a motion to

---

[29]*Griffin v. Rogers*, 653 P.2d 463, 470 (Kan. 1982).

[30]*Id.*

12

dismiss, dismissal is not appropriate on the basis that the County did not owe a duty to plaintiff.

**B. KTCA**

The Court has already found that no set of facts alleged in the Complaint could establish that the dispatcher owed a duty to plaintiff to ask Dawna Vap if there were other passengers in the vehicle Derik Vap was driving when the accident occurred. But the Court did find that the facts as alleged in the Complaint state a claim that Officer Nickel may have owed a duty to plaintiff to further investigate.  As a result, the Court must now consider whether the County is immune from liability under the KTCA. Under the KTCA, a governmental entity is liable for "damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."[31]  K.S.A. § 75-6104(a)–(w) provides a list of exceptions to liability.  Courts have explained that "[l]iability is the rule for negligent conduct while immunity is the exception."[32]

The County argues that one or more of the following exceptions to liability apply here and so they are immune from suit:

> A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from
>
> . . . .
>
> (c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule and regulation, ordinance or resolution;
>
> . . . .

---

[31]K.S.A. § 75-6103(a).

[32]*Lamb v. Albers*, 109 P.3d 1265, 1271 (Kan. Ct. App. 2005).

> (e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved; [or]
>
> . . . .
>
> (n) failure to provide, or the method of providing, police or fire protection; . . .

First, the County contends that any conduct by the County while investigating the accident is immune because it falls within the purview of enforcement of criminal and traffic laws under subsection (c). Plaintiff responds that this exception only applies to allegations that law enforcement should have prevented the accident by enforcing a law.[33] In contrast, plaintiff alleges that the County's response to the report of the accident was negligent, not that some law was or was not enforced. The Court agrees and finds this provision does not apply, based on the allegations made in the Complaint, as plaintiff makes no allegation that the County enforced or failed to enforce a law leading to plaintiff's damages.

Next, the County contends that the discretionary exception applies because its response to and investigation of the accident was a discretionary function. The proper test for applying the discretionary function exception looks "to the nature and quality of the discretion exercised. . . . [or] whether the act in question is one the legislature intended to shield from liability."[34] The discretionary function exception, however, is inapplicable in situations where a legal duty

---

[33]*See, e.g., Sisk v. Nat'l R.R. Passenger Corp.*, 647 F. Supp. 861, 862 (D. Kan. 1986) (applying exception to City for failure to enforce speed limit); *Barber v. Williams*, 767 P.2d 1284, 1287 (Kan. 1989) (finding that City, in acting in accordance with and within the scope of an ordinance in licensing and investigating a business, allowed for application of this exception).

[34]*McCormick v. Bd. of County Commr's of Shawnee County*, 35 P.3d 815, 830 (Kan. 2001) (citing *Robertson v. City of Topeka*, 644 P.2d 458 (1982)).

exists.[35]   If the County's action violated an independent legal duty to plaintiff, then it cannot properly claim it falls within the discretionary function exception.[36]  Because the Court has already found that plaintiff alleges sufficient facts, at this stage of the proceedings, to escape dismissal on the issue of whether the County violated a legal duty to plaintiff, dismissal is not appropriate on this ground either.

Finally, the County argues it is immune under the police protection exception.  The exception "is aimed at such basic matters as the type and number of fire trucks and police cars considered necessary for the operation of the respective departments; how many personnel might be required; how many and where police patrol cars are to operate; the placement and supply of fire hydrants; and the selection of equipment options."[37]  The claim alleged in the Complaint does not run to the nature and type of police protection provided after the car accident at issue. Instead, plaintiff's claim alleges that Officer Nickel should have responded or investigated whether there were passengers in the vehicle when the accident occurred, thereby preventing the progression of her injuries.  The County's motion to dismiss is denied on this ground as well.

**IT IS THEREFORE ORDERED BY THE COURT** that the County's Motion to Dismiss (Doc. 21) is **denied** and plaintiff's Motion to Hold Defendant's Motion to Dismiss in Abeyance (Doc. 30) is **denied**.

**IT IS SO ORDERED**.

---

[35]*See Dougan v. Rossville Drainage Dist.*, 15 P.3d 338, 350 (Kan. 2000); *Nero v. Kan. St. Univ.*, 861 P.2d 768, 782 (Kan. 1993); *Washington v. Kansas*, 839 P.2d 555, 560 (Kan. Ct. App. 1992).

[36]*See Nero*, 861 P.2d at 782.

[37]*Gragg v. Wichita St. Univ.*, 934 P.2d 121, 137 (Kan. 1997) (quoting *Jackson v. City of Kan. City*, 680 P.2d 877 (1984)).

Dated this <u>3rd</u> day of January 2006.

<u> S/ Julie A. Robinson        </u>
Julie A. Robinson
United States District Judge

Skiles v. County of Rawlins, Case No. 06-4040, *Memorandum and Order Denying Motion to Dismiss and Motion to Hold Motion to Dismiss in Abeyance.*